**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ROBERT HAWKINS,

        Plaintiff,

vs.                                               Case No. 3:05-cv-269-J-32TEM

UNITED STATES DEPARTMENT
OF LABOR, MINE SAFETY AND
HEALTH ADMINISTRATION,

        Defendant.

**ORDER**

Before the Court in this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, case is plaintiff Robert Hawkins' ("Hawkins'") motion for summary judgement and defendant United States Department of Labor, Mine Safety and Health Administration's ("MSHA's") motion to dismiss and alternative motion for summary judgment. The Court heard arguments on the motions at a July 13, 2005 hearing.

**I.**     **Background**

Hawkins worked for Iluka Resources, Inc. ("Iluka"), at its mineral sand mine in Clay County, Florida, until his termination in October 2003. Believing that he was terminated in retaliation for objecting to and refusing to participate in practices that would violate the Federal Mine Safety and Health Act, 30 U.S.C. §§ 801, et seq., Hawkins filed an administrative complaint against Iluka with MSHA, the

agency charged with investigating alleged retaliation of that sort.  MSHA assigned Special Investigator Terry Lingenfelter ("Lingenfelter") to the investigation. Lingenfelter interviewed Hawkins and several Iluka employees, made handwritten notes and created a typed memorandum of each interview, and collected Iluka-created documents.  Based on the investigation and an analysis thereof, MSHA rendered a decision favorable to Iluka.  MSHA's investigation generated several documents, 55 pages of which are at issue in this case.[1]

In addition to his administrative complaint, Hawkins initiated a whistleblower case against Iluka in state court.  In preparation for the state case, Hawkins' counsel made a FOIA request to MSHA for all documents in its possession relating to Hawkins' administrative complaint.  MSHA ultimately produced the 55 pages of documents, but heavily redacted them pursuant to three claimed FOIA exemptions.[2]  After exhausting his administrative remedies,[3] Hawkins filed this

---

[1]  MSHA also produced 72 pages of transcripts of Lingenfelter's interview of Hawkins.  The transcripts are not at issue in this case since MSHA earlier released them to Hawkins in unredacted form.

[2]  MSHA initially withheld entire pages of documents, but by May 18, 2005 had produced all 55 pages in redacted form.

[3]  MSHA concedes, and the Court finds, that Hawkins exhausted his administrative remedies.  Hawkins timely appealed MSHA's withholding decision but MSHA did not timely respond to the appeal.  FOIA permits a person to treat an agency's failure to comply with appellate time limits as full exhaustion of administrative remedies.  See 5 U.S.C. § 552(a)(6)(C)(i).

case to attempt to obtain some of the redacted information. Finding discovery unnecessary, the parties immediately filed their respective dispositive motions. Hawkins included an affidavit of his attorney and MSHA included affidavits of Lingenfelter and its own attorney. The Court conducted an in camera review of the 55 pages of documents in unredacted form to aid its decision.

## II. Discussion

### A. FOIA Standards

FOIA requires government agencies to disclose documents requested by members of the public. 5 U.S.C. § 552(a)(3)(A); Moye, O'Brien, O'Rourke, Hogan & Pickert v. National R.R. Passenger Corp., 376 F.3d 1270, 1276 (11th Cir. 2004). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." National Labor Relations Bd. v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978).

FOIA disclosure is not without limits. It specifies nine exemptions from its general disclosure provisions. 5 U.S.C. § 552(b). "These exemptions are designed to safeguard various public interests against the harms that would arise from overbroad disclosure." Hanson v. United States Agency for Intern. Dev., 372 F.3d 286, 290 (4th Cir. 2004). However, in keeping with FOIA's policy favoring disclosure, its "disclosure provisions are read broadly, its exemptions narrowly."

Ely v. Federal Bureau of Invest., 781 F.2d 1487, 1489 (11th Cir. 1986).

FOIA makes district courts the arbiters of disputes between members of the public demanding disclosure and agencies claiming exemptions. Id. at 1490 ("By its clear terms, FOIA places on the courts the obligation to consider and resolve competing claims of privilege and access ... ."). In a FOIA case, a district court reviews an agency's decision de novo and, if it finds that an exemption does not apply, may order the agency to produce any improperly withheld document. 5 U.S.C. § 552(a)(4)(B).

The determination of whether an exemption applies is a matter of law. Wickwire Gavin, P.C. v. United States Postal Serv., 356 F.3d 588, 591 (4th Cir. 2004). As such, "FOIA cases [generally] should be handled on motions for summary judgment, once the documents in issue are properly identified." Miscavige v. Internal Revenue Serv., 2 F.3d 366, 369 (11th Cir. 1993). FOIA places the burden on the government to prove that a withheld document falls within a claimed exemption. 5 U.S.C. § 552(a)(4)(B). The government can meet this burden on summary judgment by describing the withheld documents with reasonable specificity and explaining how they fall under one of the exemptions. Miscavige, 2 F.3d at 368-69.

The FOIA exemptions claimed by MSHA in this case are commonly referred to as "Exemption 5," "Exemption 7(C)," and "Exemption 7(D)." See 5 U.S.C. §

552(b)(5), (b)(7)(C) & (D).  The Court need only address Exemption 5 and Exemption 7(C) since they are dispositive of the case.

### B. Exemption 5

MSHA has redacted from the 55 pages of documents, and Hawkins seeks, the "Analysis" section of MSHA's "Summary Review" of Hawkins' administrative complaint.[4]  The "Summary Review" was prepared two days before MSHA's final determination letter to Iluka.  It is not entirely clear from the record who authored the "Summary Review," but the heading thereon includes the line: "ANALYST: Rodney D. Ingram" ("Ingram") and "DISTRICT RECOMMENDATION."  Ingram is not the same individual who signed the final determination letter to Iluka.

MSHA claims that the "Analysis" falls within Exemption 5, which exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... ."  5 U.S.C. § 552(b)(5).  The Supreme Court has interpreted Exemption 5 to exempt documents "normally privileged in the civil discovery context."  National Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975).  Applicable to this case, Exemption 5 includes the "deliberative process privilege."  See Department of Interior & Bureau of Indian Affairs v. Klamath Water Users Prot. Ass'n, 532 U.S. 1, 8 (2001).  This privilege

---

[4]    Hawkins also seeks disclosure of other redacted potions of the "Summary Review."  MSHA has withheld those portions under Exemptions 7(C) and 7(D).

protects "the decision making processes of government agencies ... [exempting those] documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  Sears, 421 U.S. at 150 (quotations omitted).  Its purpose is to allow agencies "to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny."  Moye, 376 F.3d at 1277.

For the deliberative process privilege to apply, an agency must prove that the withheld information is both "pre-decisional" and "deliberative."  Id.  Information is "predecisional" if it was "prepared to assist an agency decision-maker in arriving at his decision and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Id.  Information is "deliberative" if its disclosure "would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and, thereby, undermine the agency's ability to perform its functions."  Id. at 1278.

Information protected by the deliberative process privilege must be opinion and not fact.  See Nadler v. United States Dep't of Justice, 955 F.2d 1479, 1491 (11th Cir.1992)("[P]urely factual material that does not reflect the agency's deliberative process generally is not protected."), abrogated on other grounds by United States Dep't of Justice v. Landano, 508 U.S. 165 (1993); Florida House of

Reps. v. United States Dept. of Comm., 961 F.2d 941, 949 (11th Cir. 1992)("The only inquiry that should be made in deciding whether something should be denoted opinion, and hence deliberative, is: Does the information reflect the give-and-take of the consultive process?").  However, facts may be withheld when they are so inextricably connected to the opinion that their disclosure would reveal the agency's deliberative processes or when "it is impossible to segregate in a meaningful way portions of the factual information from the deliberative information." Nadler, 955 F.2d at 1491.

MSHA asserts that Exemption 5 applies to the "Analysis" because it is a section in an internal recommendation document, created two days before MSHA's final determination, that explains and analyzes the "Summary Review" conclusion that Iluka did not unlawfully retaliate against Hawkins.[5]  Hawkins responds that MSHA has not given the Court the information necessary to demonstrate that the "Analysis" is either predecisional or deliberative.

The Court has reviewed in camera the "Analysis" and concludes that it is both predecisional and deliberative.  Without going into detail that would expose its

---

[5] At the hearing on the motions, the Court asked MSHA counsel why MSHA disclosed the "Conclusion" portion of the "Summary Review" since, under MSHA's argument, it likewise could be considered a predecisional and deliberative internal recommendation.  MSHA counsel replied that it did fall under Exemption 5, but that MSHA had used its judgment to disclose it, particularly because it reflected the same conclusion as the final determination.

actual content, the Court finds that it presents internal opinions, conclusions, and recommendations about Hawkins' administrative complaint made before MSHA's final determination and therefore falls within the privilege.  See Lloyd & Henniger v. Marshall, 526 F.Supp. 485, 486 (M.D. Fla. 1981)("The opinions and conclusions reached by the compliance officer as the result of his investigation represent precisely ... predecisional communication, for the compliance officer's recommendations and opinions are used by the OSHA in deciding what agency action should follow.").  Moreover, even though some facts are presented therein, the Court finds that those facts cannot be segregated in a meaningful way from the deliberative information.

This conclusion does not end the Exemption 5 inquiry.  Hawkins asserts that even if the "Analysis" is predecisional and deliberative, it lost its privilege because MSHA effectively incorporated it into its final determination letter to Iluka, in which MSHA states that its final determination was made "[o]n the basis of the review of the information gathered during the course of the investigation."  (Doc. 8 Ex. 5.) MSHA responds that this statement neither expressly adopted nor incorporated by reference the "Analysis" and it therefore did not lose its privileged status.

Hawkins cites a recent Second Circuit case explaining that even if an opinion is predecisional and deliberative, it can lose its privilege if the agency has chosen to expressly adopt it or incorporate it by reference into an otherwise final

-8-

opinion. National Council of La Raza v. Department of Justice, 411 F.3d 350, 356 (2d Cir. 2005)(citing Sears, 421 U.S. at 161).  In such a circumstance, the opinion loses its predecisional and deliberative character.  Id.  The Second Circuit applied this principle to hold that an internal Department of Justice ("DOJ") memorandum, even if predecisional and deliberative, was not privileged because the DOJ publically and repeatedly referenced it as justification for a particular policy.  Id. at 357.  The Second Circuit noted that the DOJ could have avoided disclosure if it had simply adopted the memorandum's conclusions, noting that "[m]ere reliance on a document's conclusions does not necessarily involve reliance on a document's analysis; both will ordinarily be needed before a court may properly find adoption or incorporation by reference."  Id. at 358 (citing Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 168 (1975)).

MSHA's statement to Iluka that its final determination was made "on the basis of the review of the information gathered during the course of the investigation" does not mean that MSHA adopted or incorporated by reference the "Analysis."  The statement, which appears to be a standard one, does not reference, explicitly or implicitly, the "Analysis."  Without clear adoption or incorporation by MSHA, the "Analysis" did not lose its privilege.  See id. ("[T]here must be evidence that an agency has actually adopted or incorporated by reference the document at issue; mere speculation will not suffice)(emphasis in

original).

  C.  Exemption 7(C)

MSHA also redacted, and Hawkins seeks, the names of the Iluka management employees, including a human resource employee, whom Lingenfelter interviewed, some of whom MSHA named as respondents in the investigation, as well as interview notes and memoranda containing their statements.  MSHA claims that all of this information falls within Exemption 7(C), which exempts law enforcement information[6] that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  See 5 U.S.C. § 552(b)(7)(C).

To determine whether a disclosure would constitute an "unwarranted" invasion of personal privacy under Exemption 7(C), a district court must weigh the personal privacy interest in nondisclosure against the public interest in disclosure. Ely, 781 F.2d at 1490.  The Court therefore will examine the weight of each of these competing interests, then conduct a balancing of them to determine whether MSHA properly applied Exemption 7(C).

---

[6] Both parties agree, and the Court finds, that the redacted information was prepared for law enforcement purposes.  See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F.Supp. 1558, 1565 (M.D. Fla. 1994)("Records of an internal investigation are compiled for a law enforcement purpose if they focus specifically on alleged acts that could result in civil or criminal sanctions, if those acts were proved.").

The Eleventh Circuit has held that the personal privacy interest sought to be addressed by Exemption 7(C) encompasses more than just "intimate details of an individual's life." L & C Marine Tranp., Ltd. v. United States, 740 F.2d 919, 923 (11th Cir. 1984).  It also encompasses information about which an individual "could reasonably assert an objection to withhold from the public at large because of ... its possible adverse effects upon himself or his family," such as employer retaliation. Id. (emphasis and quotations omitted).  This aspect of the personal privacy interest recognizes that individuals will communicate more freely with a governmental agency during an investigation if they understand that their interests will be protected.  Id. at 922-23.

The Eleventh Circuit applied these principles to the facts in L & C Marine, one of the FOIA cases cited by MSHA.  There, a longshoreman was injured in a workplace accident.  Id. at 921.  As part of its regulatory duties, the Occupational Safety and Health Administration ("OSHA") investigated the accident by, among other things, interviewing four employees who had been working with the longshoreman at the time of the accident.  Id.  After being sued by the longshoreman, the employer made a FOIA request to OSHA for its accident file, but OSHA withheld therefrom the names and identifying information of the employee-witnesses.  Id.  In reversing the district court's disclosure order, the Eleventh Circuit held that OSHA's withholding was proper, concluding that the

employee-witnesses had a "substantial privacy interest ... as disclosure would lead to the type of harm, embarrassment, and possible retaliation that 7(C) was created to prevent." Id. at 922.  The Eleventh Circuit found significant that "an employee will feel more free to talk with federal law enforcement officials about possible employer violations if he feels his name will not be attached to his statements." Id. at 922-23.  The Eleventh Circuit found insignificant that their names might be discovered through other means such as through discovery in the case against the employer:

> Even if the names of the employee-witnesses are already known, disclosure would tie each witness to a particular statement. More importantly, this linking would disclose the nature and exactitude of each employee-witnesses' comments about the safety of the work place, which could cause one or more of them problems at their jobs and with their livelihoods.

Id. at 923.[7]

MSHA argues that, like the L & C Marine witnesses, the manager-witnesses interviewed by Lingenfelter, with the exception of Iluka's Operations Manager, enjoy "'broad privacy rights to be free from scrutiny arising from being associated with [p]laintiff's allegations of employer conduct." (Doc. 7-1 p. 8.)  According to

---

[7]  Although L&C Marine was decided over twenty years ago, it remains good law.  See, e.g., Nadler, 955 F.2d at 1489 (citing L&C Marine with approval).

MSHA, disclosure of their names and any statements that could be tied to them[8] could subject them to scrutiny, embarrassment, and unlawful retaliation by Iluka.[9]

Hawkins responds that L & C Marine is distinguishable because it involved the withholding of names of co-employees who witnessed a workplace accident and not, as here, the withholding of names of management employees who were involved in the termination decision under investigation, some of whom were even named as respondents.  According to Hawkins, they took actions that equate to "the actions of Iluka" and therefore have no personal privacy interest in nondisclosure.  (Doc. 8-1 p.11.)  Hawkins alleges an incongruity in MSHA's disclosure of the Iluka Operations Manager's name and identifying statements.

MSHA replies that an employee's status as a manager, participant in the decision-making process, or even respondent to an administrative complaint is of no moment if he participated in the investigation as a fact witness.  According to MSHA, such participation could subject such a witness to the same type of

---

[8]     MSHA asserts that it properly redacted statements in the interview notes and memoranda, in addition to names and personal identification information, because "given the nature of [p]laintiff's allegations of misconduct, disclosing the statements ... would essentially reveal their names."  (Doc. 7-1 p. 8.)

[9]     Hawkins argues that some of the management employees need not fear retaliation from Iluka since they left its employment last year.  MSHA counters that retaliation of former employees could occur in the form of poor references to prospective employers.  The Court agrees with MSHA on this point, adding that other retaliation against former employees includes failure to be considered for re-employment.

retaliation to which a non-management witness would be subject, and that the same interest in open communication during an agency investigation applies regardless of employee rank. MSHA further replies that there is no incongruity in disclosing Iluka Operations Manager's name and statements, but not of other management employee-witnesses, since the Operations Manager is the voice of Iluka at the location.

The Court agrees with MSHA that the principles articulated in L & C Marine apply and that the Iluka managers have a substantial personal privacy interest. The Eleventh Circuit concluded in L & C Marine that risk of retaliation is a primary consideration in deciding the presence and weight of a personal privacy interest under Exemption 7(C). Plaintiff has not cited a case, and the Court has not found one, that gives management employees interviewed by an agency investigator less of a privacy interest than non-management employees. Indeed, the Iluka manager-witnesses, just like any non-management-witnesses, could potentially be retaliated against for any statements they gave to MSHA, or for mere association with Hawkins' administrative complaint.[10] Likewise, the policy consideration of wanting open dialogue between employee-witnesses and an agency investigator

---

[10] For example, hypothetically, if a manager gave a statement to an agency investigator that upper management found contrary to the company's "party line," that manager potentially could face the same retaliation concerns as a non-manager who made the same statement.

-14-

applies with equal force to management level witnesses.

This substantial personal privacy interest in nondisclosure must be weighed against the public interest in disclosure.  The Supreme Court has defined the "public interest" in FOIA cases as "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."  United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 497 (1994) (quotations omitted).  "Any peculiar interest of the requesting party is irrelevant to evaluating this general public interest."  Office of Capital Collateral Counsel, N. Region of Fla. v. Department of Justice, ex rel. Mordenti v. Department of Justice, 331 F.3d 799, 803 (11th Cir. 2003); see also Robbins, 437 U.S. 242 ("FOIA was not intended to function as a private discovery tool."); L & C Marine, 740 F.2d at 923 ("[P]rivate needs of the [employer] for documents in connection with litigation ... play no part in whether disclosure is warranted.").

Hawkins argues that there is a strong public interest in disclosure that would allow the public to determine how MSHA handles its retaliation investigations, particularly in the area of mine safety.[11]  MSHA responds that this type of asserted

---

[11] At the hearing, Hawkins' counsel candidly admitted that this FOIA case probably would not have been brought but for Hawkins' pending state case against Iluka.  Hawkins argues that what is important is that there is a public interest regardless of his private interest.  Hawkins cites Cooper Cameron Corp. v. United States Dept. of Labor, Occupational Serv. & Health Admin., 280 F.3d 539, 550 (5th

public interest requires Hawkins to make the showing articulated in National Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004), the recent Supreme Court case involving the withholding of crime scene photographs of the late Vincent Foster. In Favish, the Supreme Court held:

> Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is

---

Cir. 2002). Cooper Cameron involved a large gas explosion outside of a petrochemical company's storage facility. Id. at 541. As in L & C Marine, OSHA conducted an investigation that included obtaining statements from employee-witnesses. Id. The explosion spawned litigation against, among others, a valve manufacturer, which prompted the valve manufacturer to seek disclosure of OSHA's investigation file, including employee-witness names. Id. at 541-42. OSHA refused disclosure and the valve manufacturer sued. Id. at 542. The district court granted summary judgment in favor of OSHA, finding that both Exemptions 7(C) and 7(D) applied. Id. The Fifth Circuit reversed in part, finding that a "fact specific" rather than "categorical" approach was warranted because the requested documents involved an event - - the explosion - - that garnered wide-ranging public interest, including the interests of environmental and other groups. Id. at 553-54. Based on this fact-specific approach, the Fifth Circuit concluded that any privacy interest in nondisclosure borne by the witnesses was outweighed by the public's strong interest in disclosure to determine whether OSHA made the appropriate inquiries of the witnesses and had ensured that the petrochemical company maintained a safe storage facility. Id. The Court finds Cooper Cameron unpersuasive in this case for three reasons. First, Cooper Cameron involved an explosion generating heavy public interest that is not present in this case. Second, the Eleventh Circuit has not shown a proclivity towards the Fifth Circuit's "categorical" versus "fact-specific" approach. Third, it is not clear if the Fifth Circuit would have reached the same conclusion if the Supreme Court's opinion in Favish had preceded it.

-16-

>  unwarranted.
>  ...
>
>  We hold that, where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

Favish, 541 U.S. at 174.  MSHA asserts that even if Hawkins could meet this Favish burden, he has not demonstrated that disclosure of the witness names and statements will advance any public interest in disclosure.

The Court finds that, in contrast to the substantial privacy interest in nondisclosure, the public interest in disclosure is less significant.  Even assuming the Favish burden applies under the circumstances present in this case, and that Hawkins could meet it, Hawkins has not shown how disclosure of the witness names and interview notes and memoranda tying them to particular statements would further the public interest in monitoring MSHA's enforcement efforts.  The numerous pages of partially-redacted documents that have already been made available to the public, including the complaint, the transcript of Hawkins' interview, and portions of the "Summary Review," are sufficient to enable the public to evaluate MSHA's investigation.  See United States Dept. of State v. Ray, 502 U.S. 164, 178-79 (1991)(holding that redacted reports of interviews with Haitian returnees sufficiently informed reader about State Department's performance of

duties, that disclosure of names and other identifying information would not add to this goal; and that mere suggestion that reports might be inaccurate did not justify disclosure); Ford v. West, No. 97-1342, 1998 WL 317561, at *3 (10th Cir. June 12, 1998)(holding that public interest in disclosure of redacted names was low since redacted pages were sufficient to inform public of agency's response to harassment complaint); Halloran v. Veterans Admin., 874 F.2d 315, 324 (5th Cir. 1989)(refusing to order release of requested documents because the public interest in learning about the nature, scope, and results of the agency's investigation was substantially served through release of redacted transcripts and the report of the agency).

The Court's balancing of the substantial private interest in nondisclosure with the less significant public interest in disclosure favors nondisclosure.  For this reason, and without the existence of any disputed material facts, the Court finds as a matter of law that MSHA properly applied Exemption 7(C) to withhold and redact the witness names and interview notes and memoranda that would tie the witnesses to their statements.  The Court further finds as a matter of law that MSHA has, in accordance with its obligation under 5 U.S.C. § 552(b), provided Hawkins with all reasonably segregable information.

### III.    Conclusion

For the reasons stated above and based on the parties' submissions and the

in camera review of the unredacted documents, the Court concludes that the Hawkins received all the information to which he was entitled under FOIA and that MSHA's withholding under Exemption 5 and Exemption 7(C) was proper. Accordingly, it is hereby **ORDERED:**

1.   Plaintiff's Motion to Expedite Determination of Pending Motions (Doc. 11) is **GRANTED**.

2.   Plaintiff's Motion to Strike Portions of Declarations of Lingenfelter and Miller (Doc. 10) is **DENIED** as moot.

3.   Plaintiff's Motion for Summary Judgment (Doc. 9) is **DENIED**.

4.   Defendant's Motion to Dismiss (Doc. 6) is **DENIED**.

5.   Defendant's Motion for Summary Judgment (Doc. 7) is **GRANTED.** The Clerk is directed to enter a separate judgment in favor of defendant United States Department of Labor, Mine Safety and Health Administration, and against plaintiff Robert Hawkins.

6.   For purposes of any appellate review, the Court will file under seal the 55 pages of unredacted documents that MSHA delivered to Chambers pursuant to the Court's Order dated June 30, 2005.

**DONE AND ORDERED** at Jacksonville, Florida on August 19, 2005.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　TIMOTHY J. CORRIGAN
　　　　　　　　　　　　　　　　　　　United States District Judge

p.
Copies to counsel of record